IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Randolph Odell Rowe, ) | |
| ) | |
| Plaintiff, ) | C/A No. 1:19-cv-563-MBS |
| ) | |
| v. ) | |
| ) | **OPINION AND ORDER** |
| Andrew Saul, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

On February 25, 2019, Plaintiff Randolph Odell Rowe filed the within action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of Defendant Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits and supplemental security income.

### I. RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff is a fifty-six-year-old male. R. 331. Plaintiff has a twelfth grade education and has completed some college-level coursework. Id. Plaintiff previously worked as a mechanic. R. 63. Plaintiff has not worked since August 27, 2015, around the time of his alleged disability onset date. R. 54.

On November 2, 2015, Plaintiff filed an application for a period of disability and disability insurance benefits. The same day, Plaintiff also protectively filed an application for supplemental security income. In both applications, Plaintiff alleged disability beginning on August 27, 2015. R. 52. Plaintiff's claims were denied both initially and upon reconsideration.

A hearing was held before an Administrative Law Judge ("ALJ") on January 4, 2018. Plaintiff testified that he had been an ASC-certified undercar specialist before he could no longer

work. R. 80. Plaintiff started working as a mechanic in high school, and then joined the Air Force and worked as an aerospace ground equipment technician for ten years. Id. He then worked for Sears and Midas for close to twenty years between the two of them. He tried working for Toyota but would lose his breath walking across the shop and toting and bending over the cars. R. 81.

Plaintiff testified that he has to stop and catch his breath after ten steps, and less if he tries to carry something. R. 85. When he bends over, he cannot breathe. The weather also affects his breathing. R. 86. Plaintiff testified that he has to stop every few steps going up stairs or any kind of incline. Plaintiff testified that he used to smoke two to three packs of cigarettes a day, but has reduced his smoking to less than a pack a day. R. 87. Plaintiff stated he has arthritis in his feet that prevents him from wearing shoes, and that he wears braces on his hands for carpel tunnel syndrome because otherwise he cannot move his fingers. R. 88. Plaintiff testified that he cannot grip wrenches to turn them, that he does not have the strength to tighten or loosen nuts anymore. He can use a knife if it has a big handle, and he can hold onto a steering wheel. R. 89. Plaintiff has neuropathy in the tips of his fingers and his palms, and from the bottom of his feet to his toes. R. 90. Plaintiff testified that, bending over, his back hurts all the time, and that if he sits for too long he has to lie down and stretch because of arthritis in his neck and back. R. 91.

Plaintiff stated that he started using a CPAP machine, which allows him to sleep three or four hours before he has to get up. R. 92. This leaves him falling asleep during the day. Plaintiff stated that he panics when he cannot breathe, and that he gets frustrated and angry because he no longer can do things he had been doing his whole life. R. 93. He has a rail to hold onto when he takes a shower, because when he bends over he loses his breath and starts getting dizzy and anxious. Plaintiff testified that he could pick up five pounds four or five times in an hour. R. 94. He can wipe counters but relies on his daughter to take care of household chores. R. 95-96. Plaintiff takes

Buspirone, Prozac, and Trazadone, which have helped with his mood. R. 98. He takes Ibuprofen 600 for his arthritis and Gabapentin for neuropathy. R. 103. According to Plaintiff, if he does not have to sit completely still, he can sit for thirty to forty-five minutes. R. 106. Plaintiff uses Abreva, Symbicort, and Albuterol to help him breathe. R. 108.

At the close of the hearing, Plaintiff's counsel noted that Plaintiff had received a residual functional capacity of light work that included occasional ramps and stairs, frequent balancing, postural, occasional bending and crawling, but that Plaintiff had testified he could not perform these tasks. Plaintiff's counsel argued that, considering the lack of feeling in Plaintiff's hands, he would not be able to perform even sedentary work. R. 118.

On March 26, 2018, the ALJ issued an unfavorable decision. R. 49-71. The ALJ determined that, since the onset date, Plaintiff suffered from severe impairments of chronic obstructive pulmonary disease (COPD), degenerative joint disease of the hands and feet, degenerative disc disease of the lumbar spine, obstructive sleep apnea, obesity, and adjustment disorder with anxious mood. R. 54-55. The ALJ determined that the impairments significantly limited Plaintiff's ability to perform basic work activities. R. 55. The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 55. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged physical symptoms of shortness of breath, pain in his feet, hands, and back, fatigue, as well as mental symptoms including panic, anxiety about health, frustration, and anger. R. 58. However, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 59-60.

Regarding Plaintiff's COPD, the ALJ determined that the medical evidence suggested Plaintiff's symptoms were mild to moderate, and Plaintiff's "active smoking habit also tends to suggest that his COPD symptoms are not severe enough that he is willing to make a change in lifestyle." R. 62. The ALJ considered evidence of medical visits where Plaintiff displayed "moderately severe" COPD symptoms. R. 60. Regarding Plaintiff's degenerative joint disease, the ALJ found that "x-rays have not indicated nerve root impingement or stenosis." R. 62. The ALJ further found that Plaintiff's Veteran's Administration records show sporadic complaints of back pain and that, while Plaintiff had been prescribed Diclofenac for osteoarthritis, Plaintiff has not been prescribed a stronger form of pain relief on a long-term basis. Id. Furthermore, in evaluating Plaintiff's degenerative joint disease in his hands, the ALJ indicated that during exams Plaintiff had been diagnosed with carpel tunnel syndrome, but had not received a substantial amount of treatment for it. Plaintiff was negative for Tinel's and Phalen's sign, and he did not show reduced grip strength in his hands or reduced range of motion in his wrists. Id.

Regarding Plaintiff's anxiety, the ALJ found that Plaintiff had seen beneficial results from psychiatric medication. Id. The ALJ observed that Plaintiff's symptoms do not appear to have been particularly severe to begin with. Id. The ALJ noted that Plaintiff has never required emergency treatment or hospitalization because of mental health issues and that Plaintiff's irritability has improved over time. Id. In reaching his conclusions, the ALJ gave some weight to the State Agency's medical consultants, who concluded that Plaintiff could perform light exertion. R. 63. The ALJ gave little weight to the opinion of Nurse Practitioner Pamela O'Toole, who indicated that she advised Plaintiff not to return to work on two occasions. Id. The ALJ gave little weight to letters from Plaintiff's family members, as they were not from medical professionals. Id.

The ALJ found that Plaintiff is restricted to a reduced range of light exertion, and that there

is no basis for limiting Plaintiff to sedentary-level exertion. The ALJ found that Plaintiff remains able to engage in frequent bilateral reaching overhead, fingering, and handling; he has the capacity for frequent interaction with supervisors, co-workers, and the public; he is limited to simple, routine tasks in an environment free from product-rate pace of strict quota requirements; and that he would be off-task for five percent of the workday, beyond regularly scheduled breaks, as the result of his combination of physical pain, fatigue, and shortness of breath. The ALJ determined that Plaintiff could never climb ladders, ropes, or scaffolds; that he could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; that he could not tolerate exposure to extreme heat, extreme cold, and humidity, and could tolerate only occasional exposure to fumes, odors, dusts, gases, and poorly ventilated areas. R. 57.

The ALJ determined Plaintiff could not perform his previous medium-level exertion job as a mechanic. R. 63-64. The ALJ determined that, based upon Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy Plaintiff could perform, including Marker, Stock Checker, and Router. These positions involve light exertion and unskilled work, and are compatible with Plaintiff's residual functional capacity. R. 65. Accordingly, the ALJ concluded that, based on the application for a period of disability and disability insurance benefits filed on November 2, 2015, Plaintiff is not disabled under sections 216(i) and 223(d) of the Act. In addition, the ALJ concluded that, based on the application for supplemental security income protectively filed on November 2, 2015, Plaintiff is not disabled under section 1614(a)(3)(A) of the Act. R. 65.

Plaintiff appealed the ALJ's decision to the Appeals Council on March 29, 2018. R. 1. The Appeals Council dismissed Plaintiff's appeal on January 10, 2019, making the ALJ's decision the final determination of the Commissioner. Id. Plaintiff's request for judicial review followed. In

accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 (D.S.C.), this matter was referred to United States Magistrate Judge Shiva Hodges for a Report and Recommendation.

On October 9, 2019, Plaintiff filed his brief in this court, asserting that the ALJ's decision is not supported by substantial evidence. ECF No. 14. Plaintiff asserts that the ALJ failed to discuss his residual functional capacity findings on a function-by-function basis. Id. at 10. Plaintiff contends that the ALJ did not reconcile the evidence suggesting Plaintiff is limited in his ability to stand and walk on an almost continuous basis with his conclusion that there is no basis for limiting Plaintiff to sedentary-level exertion. Plaintiff argues that the ALJ did not make even a minimal connection between facts showing Plaintiff's medical issues and his finding that Plaintiff could walk and stand for six to eight hours per day while carrying and lifting ten to twenty pounds on a regular and continuing basis. Id. at 14-15. Furthermore, Plaintiff asserts that the ALJ discounted evidence of impaired lung functioning; degenerative joint disease, carpel tunnel syndrome, swelling, and decreased sensation in the hands; decreased sensation and degenerative joint disease in the feet; degenerative disc disease; and moderate sleep apnea; and did not consider testimony from Plaintiff when evaluating these conditions. Id. at 11-12. The Commissioner filed a response on November 18, 2019.

On March 25, 2020, the Magistrate Judge filed her Report and Recommendation. ECF No. 19. The Magistrate Judge noted that a residual functional capacity represents the most a claimant can do despite his limitations. Citing 20 C.F.R. §§ 404,1545(a) and 416.945(a), the Magistrate Judge noted that the residual functional capacity must be based on all relevant evidence in the record and should account for all of the claimant's medically-determinable impairments. She also noted that, pursuant to SSR 96-8p, the ALJ must determine the claimant's ability to perform work-related physical and mental activities on a regular and continuing basis, and he must explain how any

material inconsistencies or ambiguities in the record were resolved. The Magistrate Judge observed, however, that "the Fourth Circuit has declined to adopt a 'per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis.'" ECF No. 19, 33 (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)). She noted that "'remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Mascio, 780 F. 3d at 636).

The Magistrate Judge found that the ALJ's decision contains a narrative reflecting his consideration of Plaintiff's limited ability to stand and walk, as well as evidence of degenerative disc disease of the lumbar spine, impaired lung capacity, and degenerative joint disease and decreased sensation in his feet. She noted the ALJ discussed Plaintiff's subjective allegations of the physically limiting effects of his medical conditions, but found Plaintiff's COPD to be mild or moderate, his degenerative joint disease and degenerative disc disease to be mild with no nerve-root impingement or stenosis. The Magistrate Judge observed that Plaintiff's back pain was treated with Diclofenac and his providers had not prescribed stronger pain medication on a long-term basis. Id. at 34. The Magistrate Judge further found that the ALJ considered Plaintiff's allegations and the other evidence of record as to impairments that affected Plaintiff's ability to use his arms and hands. Id. at 35. The Magistrate Judge stated that the ALJ considered Plaintiff's testimony about limitations as well as x-rays, exams, and findings of medical professionals. The Magistrate Judge found that the ALJ adequately discussed Plaintiff's sleep apnea by including restrictions in the residual functional capacity assessment to address fatigue. Id. at 36.

In sum, the Magistrate Judge determined that the ALJ's assessment "included a narrative discussion that accounts for all the relevant evidence as to Plaintiff's medically-determinable

impairments and explains how the evidence supports the conclusions." Id. at 37. Accordingly, the Magistrate Judge determined that the ALJ's residual functional capacity assessment is supported by substantial evidence, and recommended that the Commissioner's decision should be affirmed. Id.

On April 20, 2020, Plaintiff filed objections to the Magistrate Judge's Report and Recommendation. ECF No. 23. The Commissioner filed a response to Plaintiff's objections on April 30, 2020. ECF No. 25.

This matter is now before the court for review of the Magistrate Judge's Report and Recommendation. The court is charged with making a de novo determination of any portions of the Report to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28. U.S.C. § 636(b).

## II.  STANDARD OF REVIEW

A court should review de novo only those portions of a Magistrate Judge's Report to which specific objections are filed and review those portions to which only "general and conclusory" objections have been made – for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Opriano v. Johnson, 687 F.2d 44, 77 (4th Cir. 1982).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 4059(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that

substitutes the court's findings for those of the Commissioner. Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that [her] conclusion is rational." Vitek, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. Richardson v. Perales, 402 U.S. 389, 401 (1971).

### III.  APPLICABLE LAW

An individual is eligible for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, if he or she is insured, has not attained retirement age, has filed an application for disability insurance benefits, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). Under Title XVI of the Act, 42 U.S.C. §§ 1381-3(f), benefits are available to an individual who is financially eligible, files an application, and is disabled as defined in the Act. 42 U.S.C. § 1382. An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The

disabling impairment must last, or be expected to last, for at least twelve consecutive months. See Barnhart v. Walton, 535 U.S. 212, 214-15 (2002). Additionally, for disability insurance benefits, the claimant must prove he was disabled prior to his date last insured. Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012) (citing 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.101(a), 404.131(a)).

The Commissioner has developed the following five-step evaluation process for determining whether a claimant is disabled under the Act: (1) whether the claimant engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment; (3) whether the impairment meets or equals the severity of an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(v). Through the fourth step, the burden of production and proof is on the claimant. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983). At step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. Id. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred by not considering Plaintiff's inability to stand and walk for most of an entire work day. ECF No. 23. Plaintiff notes that SRR 83-10 defines "light work" as follows:

> Light work. The regulations define light work as lifting no more than 20 pounds at

> a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it require a good deal of walking or standing – the primary difference between sedentary and most light jobs.
>
>     . . . .
>
> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.

Plaintiff asserts that the ALJ's analysis was "insufficient" and that the record "contains no medical opinion that [Plaintiff] was able to stand and walk for six of eight hours in a 24-hour period." Id. at 3, 6. Plaintiff asserts that he has moderately severe emphysema and COPD with lung scarring and hyperinflation, medical conditions that are well known to cause severe shortness of breath. Plaintiff argues that the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's symptoms; but rejected Plaintiff's testimony about shortness of breath for only two reasons, (1) an occasional reference to one of these conditions as "mild" or "moderate," and (2) the fact that Plaintiff smokes. Id. at 5. Plaintiff contends that the record contains no medical opinion that Plaintiff is able to stand and walk for six of eight hours in a twenty-four hour period. According to Plaintiff, the ALJ substituted his own observation and incorrect medical judgments about the nature and effects of Plaintiff's medical conditions, which the Magistrate Judge erred in approving. Id. at 6. The court disagrees.

As the Magistrate Judge noted, and as recited hereinabove, the ALJ recited in detail Plaintiff's complaints regarding shortness of breath. R. 58. Regarding Plaintiff's COPD, the ALJ noted the following:

- Plaintiff reported on January 7, 2015 that he was experiencing increased shortness of breath. His lungs were clear to auscultation and normal in terms of excursion. There was evidence of emphysematous changes in Plaintiff's lungs, as well as

> nodules in his right lung.
>
> - On March 3, 2016, Plaintiff presented for pulmonary function testing. Plaintiff had dyspnea after any exertion, a productive cough, and frequent wheezing. PFT results showed normal vital capacity in Plaintiff's lungs on his best testing. Other results of testing showed Plaintiff has a mild obstructive ventilatory deficit.
>
> - Plaintiff presented at a pulmonary clinic on June 6, 2016. Plaintiff claimed that his symptoms had been slowly progressive and occurred mostly on exertion. Plaintiff reported that he was able to walk about a block with stopping to catch his breath, and that he did not have dyspnea at rest. His lungs had equal breath sound bilaterally and were clear to auscultation bilaterally. No wheezing or crepitation was noted. Plaintiff was diagnose with COPD and moderately severe centrilobular emphysema. PFT results from November 2017 showed moderate obstruction, normal lung volumes, and mild reduction in diffusion capacity.

R. 61-62.

Based on these facts and other information in the record, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the evidence in the record. Nevertheless, the ALJ found a reduced range of light exertion to be appropriate, which included Plaintiff being off tasks for five percent of the workday, beyond regularly scheduled breaks. Additionally, contrary to Plaintiff's contention, the record contains medical opinions regarding Plaintiff's ability to walk. In performing separate residual functional capacity assessments, Dr. Hugh Wilson and Dr. Jean Smolka both opined that Plaintiff could stand or walk for six hours in an eight-hour workday. R. 125, 152.

"[I]t is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is 'substantial evidence' in the record to support the final decision below." Jenkins v. Saul, Civil Action No. 1:19-CV-00298-KDB, 2020 WL 5440511, *2 (W.D.N.C. Sept. 10, 2020) (citing Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982)) (internal citations omitted).

Plaintiff's objections are without merit.

## V. CONCLUSION

After reviewing the entire record, the applicable law, the briefs of the parties, the findings and recommendations of the Magistrate Judge, and Plaintiff's objections, the court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference. For the reasons set out here and in the Report and Recommendation, the Commissioner's final decision is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
Senior United States District Judge

Charleston, South Carolina

September 15, 2020